**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**ATLANTIC RICHFIELD COMPANY,**

     Plaintiff,

v.                                No. 1:15-cv-56-JAP/KK

**THE PUEBLO OF LAGUNA, an Indian
tribe**, and **LAGUNA CONSTRUCTION
COMPANY, INC.,**

     Defendants.

## MEMORANDUM OPINION AND ORDER

In DEFENDANT PUEBLO OF LAGUNA'S OPPOSED MOTION TO DISMISS THE

COMPLAINT (DOC. 1) UNDER FED. R. CIV. P. 12(B)(1) AND 12(B)(6) (Doc. No. 35) and

MEMORANDUM IN SUPPORT OF THE PUEBLO OF LAGUNA'S MOTION TO DISMISS

UNDER FED. R. CIV. P. 12(B)(1) AND 12(B)(6) (Doc. No. 36) (Memo), Defendant Pueblo of

Laguna (the Pueblo) asserts sovereign immunity and asks the Court to dismiss Plaintiff Atlantic

Richfield Company's (ARCO's) eight Claims for Relief[1] for lack of subject matter jurisdiction.

In the alternative, the Pueblo maintains that the Court should dismiss ARCO's claims as

untimely and legally deficient under Federal Rule of Civil Procedure 12(b)(6). ARCO opposes

both requests. *See* ATLANTIC RICHFIELD COMPANY'S RESPONSE IN OPPOSITION TO

THE PUEBLO OF LAGUNA'S MOTION TO DISMISS (Doc. No. 47) (Response). According

to ARCO, the Pueblo expressly waived sovereign immunity for the claims at issue in this lawsuit

and these claims are adequately pled. Having considered the parties' submissions, including the

Pueblo's REPLY MEMORANDUM IN SUPPORT OF THE PUEBLO OF LAGUNA'S

---

[1]The Court will refer to what Plaintiff designates as its eight "Claims for Relief" as Plaintiff's claims or, more specifically, as Counts 1-8.

1

MOTION TO DISMISS UNDER FED. R. CIV. P. 12(B)(1) AND 12(B)(6) (DOC. 35) (Doc. No. 67) (Reply),[2] and being advised as to the relevant law, the Court agrees that the Pueblo is entitled to assert sovereign immunity as a bar to ARCO's Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA) Claims for Relief (Counts 1-5). The Court will, therefore, dismiss these claims without prejudice. However, the Court finds that the Pueblo waived its sovereign immunity with regard to ARCO's breach of contract Claims for Relief (Counts 6-8). For the reasons outlined below, the Court will deny the Pueblo's motion to dismiss Counts 6-8.

### Background

This lawsuit focuses on who must pay for environmental cleanup and remediation at the Jackpile Paguate uranium mine, located within the Pueblo of Laguna, in Cibola County, New Mexico. The background facts are summarized in great detail in the Court's February 9, 2016 MEMORANDUM OPINION AND ORDER (Doc. No. 71) and need not be restated here. Suffice it to say, ARCO, the former operator of the mine, seeks damages from the Pueblo for the Pueblo's supposed failure to honor its promise to conduct an adequate cleanup and remediation of the mine. ARCO's claims fall into two categories: (1) claims brought directly under CERCLA (Counts 1-5) and (2) state law breach of contract claims (Counts 6-8).[3] According to ARCO, all of these claims arise out of ARCO and the Pueblo's 1986 Agreement to Terminate Leases.

---

[2] The Pueblo's Memo and Reply both have page numbers that differ from the numbers assigned by CM/ECF. When the Court refers to a specific page in either document, it is referring to the page number assigned by CM/ECF.

[3] Counts 6–8 seek different forms of relief; Count 6 seeks declaratory relief, Count 7 injunctive relief, and Count 8 money damages. However, the same legal theory of wrongdoing underlies all three claims – ARCO contends that the Pueblo breached its contractual obligation to assume liability for cleanup efforts and complete an effective cleanup of the Jackpile Mine. Thus, for the purposes of this motion, the Court will, as the parties did, discuss these Counts together.

Under the Agreement to Terminate Leases, the Pueblo released ARCO from all "responsibility and liability for reclamation of the Mine" and agreed to personally undertake remediation of the Mine in exchange for $43.6 million dollars. 1986 Agreement to Terminate Leases, Exhibit A to COMPLAINT (Doc. No. 1-2 at 3-4) (Agreement). The Pueblo's affirmative contractual obligations with regard to the contemplated remediation are set forth in full in paragraph 3 of the Agreement:

> 3.      In consideration for the monies to be paid by Anaconda[4] under Paragraph 2 of this Agreement, Anaconda will be deemed to have met all of its reclamation and other environmental obligations relating to the [Jackpile] Mine, and The Pueblo, with the approval of the Secretary of the Interior, hereby releases Anaconda from all responsibility and liability for reclamation of the Mine, for performing other environmental remedial measures relating to the mine, and for all other obligations arising under the leases, including all bonding requirements, and will:
>
> (a)      Assume full and complete responsibility and liability under all applicable laws, including any obligations imposed by Anaconda's leases with The Pueblo, for:
>
> (i)      the cleanup, reclamation or other environmental remedial action at the mine; and
>
> (ii)      conducting all other related and necessary activities in a manner acceptable to, or required by governmental agencies with jurisdiction over reclamation and other related environmental programs, and which is otherwise consistent and in compliance with all applicable environmental laws and regulations; and
>
> (iii)      obtaining requisite approval for such activities from the appropriate governmental authorities.
>
> (b)      Indemnify and hold Anaconda harmless from, and reimburse Anaconda and its officers, directors or agents for any amounts paid or expenses incurred, including attorneys' fees and expenses, because of any claim, liability or obligation

---

[4] Anaconda is the predecessor in interest to ARCO.

(i)      related to cleanup and reclamation of the Mine, or

(ii)      asserted under any applicable law or regulation, and relating to the Pueblo's obligation hereunder, including without limitation effects due to the generation, treatment, storage or disposal of hazardous substances or wastes, or toxic chemicals, or related activities, by Anaconda on The Pueblo lands including, but not limited to, any liability or obligation which exists or arises under the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA) and the Resource Conservation and Recovery Act (RCRA).

(c)      Release Anaconda from any and all claims by the Pueblo, and refrain from filing any claims or actions on behalf of The Pueblo, for damages to The Pueblo's natural resources, or for recovery for the costs of cleanup and reclamation under CERCLA or other applicable law, including damages caused by blasting at the Mine.

*Id.* at 3-4. The Agreement also contains a provision waiving the Pueblo's sovereign immunity

that reads as follows:

In order to provide Anaconda an effective means of securing judicial or other relief in the event of a breach by The Pueblo of its obligations under this Agreement, The Pueblo hereby expressly waives its sovereign immunity as to any claims or actions brought by Anaconda under this Agreement, and consents to be sued in a Federal Court of competent jurisdiction, provided, however, that The Pueblo's liability shall not exceed Ten Million Dollars ($10,000,000) and the term of the indemnification agreement shall be for ten (10) years from the effective date of this Agreement;

*Id.* at 5. One of the primary issues before the Court is the scope of this waiver.

**Standard of Review**

**I.      Tribal Sovereign Immunity**

The doctrine of tribal sovereign immunity protects federally recognized Indian tribes,

such as the Pueblo, from suit absent congressional or tribal authorization. *Kiowa Tribe v. Mfg.*

*Techs.*, 523 U.S. 751, 754 (1998) ("As a matter of federal law, an Indian tribe is subject to suit

4

only where Congress has authorized the suit or the tribe has waived its immunity."); *see also*

*Bonnet v. Harvest (US) Holdings, Inc.*, 741 F.3d 1155, 1159 (10th Cir. 2014) (discussing the

principles behind tribal sovereign immunity). Putative waivers of sovereign immunity are strictly

construed. Congress may not strip Indian tribes of their sovereign immunity by implication; any

abrogation must be "unequivocally expressed." *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58

(1978). "Similarly, to relinquish its immunity, a tribe's waiver must be 'clear.'" *C & L*

*Enterprises, Inc. v. Citizen Band of Potawatomi Indian Tribe*, 532 U.S. 411, 418 (2001).

Because tribal sovereign immunity divests a court of subject matter jurisdiction over the

tribe, a tribe may raise an immunity defense by way of a motion under Federal Rule of Civil

Procedure 12(b)(1). *E.F.W. v. St. Stephen's Indian High Sch.*, 264 F.3d 1297, 1302-1303 (10th

Cir. 2001). Such motions come in two forms. *Id.* (citing *Holt v. United States*, 46 F.3d 1000,

1002-03 (10th Cir. 1995)). First, a defendant can facially attack the complaint's allegations of

subject matter jurisdiction.  In this case, the court accepts the allegations in the complaint as true.

*Id.* Second, a defendant may go beyond the information in the complaint and challenge the

underlying facts upon which subject matter jurisdiction depends. *Id.* Here, the Pueblo does not

attack the factual allegations contained in the complaint.[5] The Court will, therefore, construe the

Pueblo's assertion of sovereign immunity as a facial challenge to the Court's subject matter

jurisdiction.

## II.     Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint for

---

[5] The Pueblo attached a copy of the Record of Decision to its Memo. Record of Decision, Exhibit 1 to
Memo (Doc. No. 36-1). The Pueblo, however, does not rely on the contents of the Record of Decision to
attack the facts in the complaint or the facts underlying the Court's jurisdiction. The Pueblo also provided
the Court with a copy of certain sections of the 1982 Code of Federal Regulations. Code Excerpts, Exhibit
2 to Memo (Doc. No. 36-2). This assisted the Court in finding the pertinent regulations, but it did not
change the character of the Pueblo's motion.

"failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). The Supreme Court has articulated a two-step approach for district courts to use when considering a motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). First, a court must identify the adequately pleaded factual allegations contained in the complaint, disregarding any unsupported legal conclusions. *Id.* at 678. While a complaint need not include detailed factual allegations, it must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* Next, having identified the adequately pleaded facts, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. Stated concisely, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 678.

A claim is facially plausible when the complaint's "factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility lies somewhere between possibility and probability; a complaint's "allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008). The key question is not whether the plaintiff is likely to be able to prove his allegations. Rather, a motion to dismiss tests the legal sufficiency of a plaintiff's claims. In evaluating a motion to dismiss, the court views the complaint in the light most favorable to the plaintiff. *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013).

**Discussion**

## I.      ARCO's CERCLA claims (Counts 1-5)

The Pueblo argues and ARCO concedes that the Pueblo would normally enjoy immunity from ARCO's CERCLA claims in the absence of a tribal waiver. The parties, however,

vigorously dispute whether such a waiver exists. ARCO claims the Pueblo waived its sovereign immunity for CERCLA claims arising from the Jackpile Mine by expressly relinquishing its immunity for claims brought under the 1986 Agreement to Terminate Leases. As ARCO reads it, the Pueblo's sovereign immunity release includes CERCLA claims because "[o]ne of the Pueblo's obligations under the . . . Agreement was to 'assume full and complete responsibility and liability under all applicable law' for 'the cleanup, reclamation or other environmental remediation at the Mine.'" Response at 2. The Pueblo contends that ARCO has misconstrued the scope of the waiver and the meaning of the 1986 Agreement to Terminate Leases. According to the Pueblo, the Agreement does not provide a "contractual route to CERCLA liability." Reply at 8.

When faced with a dispute over the scope of a waiver of tribal sovereign immunity, the court must construe the challenged waiver strictly. *Ramey Constr. Co. v. Apache Tribe of Mescalero Reservation*, 673 F.2d 315, 320 (10th Cir. 1982). This is because "[i]t is settled that a waiver of sovereign immunity cannot be implied but must be unequivocally expressed." *E.F.W.*, 264 F.3d at 1304 (quoting *Santa Clara Pueblo*, 436 U.S. at 58). In other words, for a putative waiver of sovereign immunity to be effective it must clearly apply to the claims asserted. *See Ute Indian Tribe of the Uintah & Ouray Reservation v. Utah*, 790 F.3d 1000, 1010 (10th Cir. 2015) (where terms of a sovereign immunity waiver had expired, the waiver was not clear).

Under these standards, the Court finds that the Pueblo has not clearly waived its immunity with regard to ARCO's CERCLA claims. The Pueblo's waiver of sovereign immunity is limited by its terms to claims "brought under" the 1986 Agreement to Terminate Leases. ARCO's CERCLA claims simply do not satisfy this restriction. While these claims may be factually related to the Agreement, they are brought under and governed by CERCLA. Because

the Pueblo did not clearly waive its immunity for CERCLA claims, the Court lacks subject-matter jurisdiction over those claims and will dismiss them without prejudice.

## II.     ARCO's Breach of Contract Claims (Counts 6-8)

The Pueblo makes three arguments as to why the Court should dismiss ARCO's breach of contract claims. First, the Pueblo maintains that it is immune from liability for these claims and has not waived this immunity. Second, the Pueblo argues that these claims are legally deficient. Finally, the Pueblo asserts that ARCO's breach of contract claims are time-barred. The Court will address each contention in turn.

### a.   *Sovereign Immunity*

The Pueblo acknowledges that it expressly waived its immunity for certain claims when it signed the 1986 Agreement to Terminate Leases. In particular, the Pueblo waived its immunity for any indemnity claims arising under the Agreement for a period of ten years. It also waived its immunity for any other claims arising under the Agreement for an indefinite period. Agreement at 5. The Pueblo maintains, however, that neither waiver covers ARCO's breach of contract claims. The Pueblo points out that the ten-year indemnity waiver expired in 1996 and argues that ARCO's claims are CERCLA claims subject to this limitation. In response, ARCO recognizes the ten-year limitation for bringing indemnification claims and clarifies that it is not asserting indemnification claims against the Pueblo, but is asserting breach of contract claims under ¶ 3(a) of the 1986 Agreement to Terminate Leases. Response at 6.

In the Reply, the Pueblo disagrees with this characterization and reiterates its belief that the non-indemnity waiver does not apply to ARCO's breach of contract claims. The Pueblo maintains that "ARCO is trying to bring what are inherently CERCLA claims under ¶ 3(a)," when "[t]hose claims belong under ¶ 3(b) and are timed out by ¶ 5(a)'s 10-year limit on

indemnification." Reply at 21-22. In other words, the Pueblo contends that its waiver of sovereign immunity does not extend to ARCO's breach of contract claims because these claims are based on a misreading of the Pueblo's obligations under ¶ 3(a) of the Agreement. This argument confuses the sufficiency of ARCO's claims for relief with this Court's jurisdiction over those claims. Regardless of whether Laguna Pueblo's alleged failure to assume ARCO's CERCLA liability gives rise to a *valid* claim for breach of the Agreement, this Court still has jurisdiction to determine the validity of that claim because it arises under the Agreement's waiver provision. Accordingly, the Court will deny the Pueblo's motion to dismiss Claims 6–8 under Rule 12(b)(1).

### b. Legal Sufficiency

To prevail on its breach of contract claims, ARCO must prove that (1) the Pueblo entered into a valid contract with ARCO, (2) the Pueblo breached this contract, and (3) ARCO was harmed as a result of the breach.[6] Here, the Pueblo does not challenge the sufficiency of ARCO's allegations regarding the existence of a contract and damages. Rather, the Pueblo argues that ARCO's breach of contract claim fails because the contract at issue – the 1986 Agreement to Terminate Leases – does not mean what ARCO claims it means. In other words, the Pueblo maintains that ARCO has not plausibly alleged a breach of the terms of the Agreement.

---

[6] ARCO maintains that federal law governs its breach of contract claims. While the Pueblo has not stated a position on this issue, it is not entirely clear to the Court that ARCO is correct. As a general matter, federal common law only governs "obligations to and rights of the United States," not necessarily obligations to and rights of Indian tribes. *Boyle v. United Tech. Corp.*, 487 U.S. 500, 504 (1988); *see also Gila River Indian Cmty. v. Henningson, Durham & Richardson*, 626 F.2d 708, 714–715 (9th Cir. 1980) (holding that state contract law governs breach of contract action between private citizen and Indian tribe). However, at this time, the Court need not decide whether federal or state law governs ARCO's claims. The existence of a breach, the only issue presently before the Court, is an element of a breach of contract claim under both federal and state law. *See San Carlos Irrigation and Drainage Dist. v. United States*, 877 F.2d 957, 959 (Fed. Cir. 1989); *Abreau v. N.M. Children, Youth and Families Dep't*, 797 F.Supp.2d 1199, 1247 (D.N.M. 2011) (citing *Camino Real Mobile Home Park P'ship v. Wolfe*, 119 N.M. 436, 442, 891 P.2d 1190, 1196 (N.M. 1995)).

ARCO, of course, disagrees. In its Response, ARCO identifies two ways in which it believes the Pueblo breached the 1986 Agreement to Terminate Leases: (1) the Pueblo allegedly failed to "to properly perform the environmental remediation of the mine" in accordance with CERCLA and the Record of Decision and (2) the Pueblo has allegedly encouraged the EPA "to shift the Pueblo's responsibilities [for reclamation work] to [ARCO]." Response at 21. The first alleged breach is itself divisible into two different theories. ARCO asserts both that the Pueblo breached the contract by failing to complete a CERCLA-quality cleanup and that the Pueblo breached the contract by neglecting to comply with and satisfy the provisions of the Record of Decision. In requesting the dismissal of ARCO's breach of contract claims, the Pueblo, however, does not parse out the merits of these various theories and sub-theories. It attacks ARCO's breach of contract claims as a whole. In accordance with this tactical decision, the Court will also address the viability of ARCO's breach of contract claims en masse.

The parties frame their dispute over the viability of ARCO's breach of contract claims as a dispute about the proper interpretation of ¶ 3(a) of the Agreement to Terminate Leases.  ARCO maintains that the Pueblo's allegedly shoddy cleanup and subsequent attempts to shift liability to ARCO violate the plain language of ¶ 3(a), which requires the Pueblo to "assume full and complete responsibility and liability under all applicable laws . . . for . . . the cleanup, reclamation or other environmental remedial action at the mine." Agreement at 3-4. The Pueblo, on the other hand, does not read ¶ 3(a) as obligating the Pueblo to complete a CERCLA-quality cleanup. The Pueblo maintains it was simply agreeing to conduct a "physically huge but conceptually narrow earthmoving and revegetation project." Memo at 47. The Pueblo's interpretation of the Agreement hinges on its claim that CERCLA liability cannot be assumed by

contract and its claim that ARCO's reading of ¶ 3(a) would render ¶ 3(b) superfluous. *See generally id.*

Whatever the ultimate merit of Pueblo's argument may be, it is not sufficient to warrant dismissal of ARCO's breach of contract claims. When a contract is reasonably and fairly susceptible of different constructions and one of these constructions plausibly states a claim upon which relief may be granted, a court may not resolve the meaning of the contract on a motion to dismiss. *See Elliott Indus. v. BP Am. Prod. Co.*, 407 F.3d 1091, 1108 (10th Cir. 2005) ("If a contract is ambiguous, the jury or the court must engage in factfinding to determine the meaning of the contract.") (citing *Allsup's Convenience Stores, Inc. v. North River Ins. Co.*, 127 N.M. 1 (1999)); *Mark V, Inc. v. Mellekas*, 1993-NMSC-001, ¶ 13, 114 N.M. 778, 782 (explaining that a fact-finder "may consider extrinsic evidence of the language and conduct of the parties and the circumstances surrounding the agreement, as well as oral evidence of the parties' intent" before determining the meaning of an ambiguous contract); *Martin Marietta Corp. v. Int'l Telecommunications Satellite Org.*, 991 F.2d 94, 97 (4th Cir. 1992) ("[T]he construction of ambiguous contract provisions is a factual determination that precludes dismissal on a motion for failure to state a claim.").

Here, ARCO has plausibly alleged that the Pueblo breached the 1986 Agreement to Terminate Leases. Under the Agreement, which ARCO attached to the Complaint, the Pueblo agreed to use the $43.6 million payment by ARCO "for reclamation and related purposes as prescribed by the Record of Decision issued jointly by the Bureau of Indian Affairs and the Bureau of Land Mangement [sic], and pursuant to the management plan and agreement between the Pueblo and the Secretary of the Interior governing the performance of reclamation by The Pueblo." Agreement at 3. According to ARCO, however, after the Agreement was executed and

the Record of Decision published, the Pueblo successfully lobbied the BIA to cede oversight responsibility of the remediation project to the Pueblo. COMPLAINT (Doc. No. 1 ¶ 106–107) ("Complaint"). The Pueblo then relaxed the requirements of the Record of Decision, resulting in inadequate remediation at the Jackpile Site. *Id.* ¶¶ 140–142.

While the Pueblo argues that it "was not legally responsible for the approval of the plans designed to carry out" remediation at the Jackpile Site, Memo at 55, the Court is not free at this stage in the proceedings to accept this defense-favorable view of the facts. Reading the Complaint in ARCO's favor, one may reasonably infer that the Pueblo breached the Agreement in at least two ways. First, ARCO maintains that the Pueblo improperly influenced the government to relinquish its oversight role over remediation at the Jackpile Site. *See* Agreement at 3–4 ("The Pueblo…will…assume full and complete responsibility…[for] conducting all other related and necessary activities in a manner acceptable to, or required by governmental agencies with jurisdiction over reclamation and other related environmental programs, and which is otherwise consistent and in compliance with all applicable environmental laws and regulations[.]"); Complaint ¶¶ 106–107. Second, ARCO complains that once Laguna Pueblo had assumed all practical control over implementation of the Record of Decision at the Jackpile Site, it adopted remediation standards that violated the terms of the Record of Decision. *See* Complaint ¶¶ 140–142. If true, this would constitute a straightforward breach of the Agreement. In sum, the Complaint adequately alleges that Laguna Pueblo failed to remediate the Jackpile Site as required by the Agreement. Therefore, the Complaint states a valid claim for breach of contract against Laguna Pueblo.

### c. *Timeliness*

At various places in its motion to dismiss, the Pueblo asserts, without providing any explanation, that ARCO's breach of contract claim is time-barred. Memo at 43, 45, 55. This argument however is never fully developed. The Pueblo never identifies which statute of limitations it believes is applicable or explains why ARCO's claims fall outside its deadlines. Nor does the Pueblo reply to ARCO's contention that the breach of contract claims are timely under the discovery rule. *See generally Reply.* The closest the Pueblo comes to supporting its statute of limitations argument is to make several isolated statements about the timing of ARCO's claims. *See* Memo at 56-57. (claiming that ARCO "knew or should have known long ago of the requirements of the Record of Decision" and pointing out that reclamation work was deemed complete in 1995). It is not this Court's responsibility to shoehorn these statements into a viable legal argument about the accrual of the statute of limitations. Consequently, the Court will not now address the Pueblo's arguments about timeliness. ARCO has presented a reasonable argument, based on the allegations in the Complaint, that its breach of contract claims did not accrue until recently when it learned about deficiencies in the Pueblo's reclamation efforts. If it becomes apparent during the course of discovery that ARCO's claims accrued earlier, the Pueblo can, at the appropriate time, file a motion requesting dismissal of these claims as time-barred.

IT IS THEREFORE ORDERED THAT:

1. DEFENDANT PUEBLO OF LAGUNA'S OPPOSED MOTION TO DISMISS THE COMPLAINT (DOC. 1) UNDER FED. R. CIV. P. 12(B)(1) AND 12(B)(6) (Doc. No. 35) is granted in part and denied in part.

2.  By separate order, the Court will dismiss Plaintiff's CERCLA claims (Counts 1-5)

against Defendant Pueblo of Laguna fo15cv56r lack of jurisdiction.


_____
SENIOR UNITED STATES DISTRICT JUDGE