IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**ATLANTIC RICHFIELD COMPANY,**
 Plaintiff,

v.                  No. 1:15-cv-56-JAP/KK

**THE PUEBLO OF LAGUNA, an Indian tribe**, and **LAGUNA CONSTRUCTION COMPANY, INC.,**
 Defendants.

## MEMORANDUM OPINION AND ORDER

On May 26, 2015, in lieu of filing an answer, Defendant Laguna Construction Company, Inc. (LCC) filed a motion to dismiss the claims asserted against it. *See* OPPOSED MOTION OF DEFENDANT LAGUNA CONSTRUCTION COMPANY, INC. TO DISMISS THE COMPLAINT (DOC. #1). (Doc. No. 33). In this motion and the accompanying MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT LAGUNA CONSTRUCTION COMPANY'S MOTION TO DISMISS THE COMPLAINT (DOC. #1) AGAINST IT (Doc. No. 34) (Memo), LCC asserts sovereign immunity and requests dismissal under both Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Plaintiff Atlantic Richfield Company (ARCO) opposes the motion. *See* ATLANTIC RICHFIELD COMPANY'S RESPONSE IN OPPOSITION TO LAGUNA CONSTRUCTION COMPANY'S MOTION TO DISMISS (Doc. No. 48). For the reasons discussed below, the Court will grant the motion in part and deny it in part.

### Background[1]

LCC is a federally-chartered tribal corporation whose sole shareholder is the Pueblo of

---

[1] The following facts are based, in part, on the representations in LLC's Motion and Memo. Because ARCO does not dispute these facts, the Court will accept them as true for the purpose of ruling on LLC's request for dismissal under Federal Rule of Civil Procedure 12(b)(1).

Laguna (the Pueblo), a federally recognized Indian Tribe. Memo at 7.[2] "The Pueblo initially incorporated LCC in 1988 as a New Mexico corporation." *Id.* at 8. Sometime thereafter, the Pueblo decided that it would like to change the character of the corporation by creating a federal LCC in order to take advantage of the provisions of 25 U.S.C. § 477. To this end, in 1994, the Pueblo created a second tribal corporation under § 477 with the same name as the New Mexico state corporation. *Id.* In so doing, the Pueblo stated its intention that the state LCC be merged with the federal LCC. *Id.* This intention was realized in 1995 when the two corporations – the state and federal LCCs – submitted Articles of Merger and a Plan of Merger to the New Mexico State Corporation Commission as required by statute. *See* N.M. Stat. Ann. § 53-11-1, *et seq*. The Commission approved the merger. *Id.* at 8-9. At this point, LCC New Mexico ceased to exist. Response at 4 (citing Plan of Merger, Exhibit 5 to Memo).

In the complaint, Plaintiff asserts Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA) claims against LCC based on LCC's performance of reclamation work at the Jackpile Paguate uranium mine. *See generally* COMPLAINT (Doc. No. 1) (Complaint). ARCO alleges that LCC New Mexico completed most, if not all, of this reclamation work before the 1995 merger. *Id.* ¶ 31; *see also* Response at 3-4 (citing Complaint ¶117). In light of this fact, Plaintiff avers that "[a]s named in th[e] Complaint, [LCC] includes both the New Mexico corporation that was dissolved and/or merged out of existence and the surviving federally-chartered tribal corporation." Complaint ¶ 31.

**Standard of Review**

I.     **Tribal Sovereign Immunity**

---

[2] LCC's memo and REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANT LAGUNA CONSTRUCTION COMPANY'S MOTION (DOCS. # 33, 34) TO DISMISS THE COMPLAINT (DOC. # 1) AGAINST IT (Doc. No. 63) (Reply) both have page numbers that differ from the numbers assigned by CM/ECF. When the Court refers to a specific page in either document, it is referring to the page number assigned by CM/ECF.

The doctrine of tribal sovereign immunity protects federally recognized Indian tribes from suit absent congressional or tribal authorization. *Kiowa Tribe v. Mfg. Techs.*, 523 U.S. 751, 754 (1998) ("As a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity."); *see also Bonnet v. Harvest (US) Holdings, Inc.*, 741 F.3d 1155, 1159 (10th Cir. 2014). Generally speaking, tribal sovereign immunity "extend[s] to subdivisions of a tribe, including those engaged in economic activities, provided that the relationship between the tribe and the entity is sufficiently close to properly permit the entity to share in the tribe's immunity." *Breakthrough Mgmt. Group, Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1183 (10th Cir. 2010). In such circumstances, the subdivision of the tribe (sometimes called "an arm of the tribe") is, like the tribe, entitled to sovereign immunity in the absence of a valid waiver. *Cohen v. Winkelman*, 302 F. App'x 820, 823 (10th Cir. 2008).

Putative waivers of sovereign immunity, whether congressional or tribal in nature, are strictly construed. For example, Congress may not strip Indian tribes of their sovereign immunity by implication; any abrogation must be "unequivocally expressed." *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978). "Similarly, to relinquish its immunity, a tribe's waiver must be 'clear.'" *C & L Enterprises, Inc. v. Citizen Band of Potawatomi Indian Tribe*, 532 U.S. 411, 418 (2001).

Because tribal sovereign immunity divests a court of subject matter jurisdiction over the tribe, a tribe or tribal subdivision may raise an immunity defense by way of a motion under Federal Rule of Civil Procedure 12(b)(1). *E.F.W. v. St. Stephen's Indian High Sch.*, 264 F.3d 1297, 1302-1303 (10th Cir. 2001). Such motions come in two forms. *Id.* (citing *Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995)). First, a defendant can facially attack the

complaint's allegations of subject matter jurisdiction. In such a case, the court accepts the allegations in the complaint as true. *Id.* at 1303. Second, a defendant may go beyond the information in the complaint and challenge the underlying facts upon which subject matter jurisdiction depends. *Id.* "In addressing a factual attack, the court . . . has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts." *Id.* (internal citation omitted). In accordance with this standard, the Court will construe LCC's motion as a factual attack on the Court's jurisdiction and consider the evidence attached to the motion as it relates to LCC's assertion of sovereign immunity.

## II. Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). The Supreme Court has articulated a two-step approach for district courts to use when considering a motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). First, a court must identify the adequately pleaded factual allegations contained in the complaint, disregarding any unsupported legal conclusions. *Id.* at 678. While a complaint need not include detailed factual allegations, it must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* Next, having identified the adequately pleaded facts, the court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. Stated concisely, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 678.

**Discussion**

I.  **Sovereign Immunity**

In its motion to dismiss, LCC asserts sovereign immunity as a tribal corporation organized under § 477 (these corporations are commonly referred to as "Section 17 corporations" in reference to Section 17 of the Indian Reorganization Act). In general, a defendant asserting sovereign immunity "must first establish a prima facie case that it is a sovereign state." *Orient Mineral Co. v. Bank of China*, 506 F.3d 980, 991 (10th Cir. 2007) (discussing immunity under the Foreign Sovereign Immunities Act); *see also Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 237 (2d Cir. 2006) (joining the unanimous opinion of other circuits in holding that "the governmental entity invoking the Eleventh Amendment bears the burden of demonstrating that it qualifies as an arm of the state entitled to share in its immunity."); *Gonzalez v. 7th St. Casino*, No. 09-2674, 2010 U.S. Dist. LEXIS 44127, at *4-5 (D. Kan. May 5, 2010) (casino carried the initial burden of showing that it was a tribal agency entitled to tribal immunity). In other words, LCC shoulders the initial burden of producing evidence or identifying allegations in the complaint showing that it is affiliated with a federally recognized Indian Tribe and shares in this Tribe's sovereign immunity. Here, LCC purports to satisfy this burden by pointing to its status as a § 477 federally-chartered tribal

organization owned by the Pueblo. While this argument is not airtight,[3] ARCO does not dispute that LCC possesses tribal sovereign immunity as a subdivision of the Pueblo. As a result, for the purposes of ruling on this motion, the Court will accept that LCC enjoys immunity from suit due to its relationship with the Pueblo. Thus, the burden is on ARCO to establish that LCC (or Congress) has waived LCC's immunity. *See Impact Energy Res., LLC v. Salazar*, 693 F.3d 1239, 1244 (10th Cir. 2012) ("The party asserting jurisdiction bears the burden of proving that sovereign immunity has been waived.").

In its Response, ARCO provides three different reasons why it believes LCC's tribal sovereign immunity does not shield LCC from liability for the specific claims asserted in this lawsuit. First, ARCO contends that the Pueblo waived LCC's immunity for ARCO's CERCLA claims in ARCO's and the Pueblo's 1986 Agreement to Terminate Leases. Second, ARCO argues that during the merger process, the Pueblo and LCC waived LCC's sovereign immunity for liabilities the federally-chartered LCC inherited from LCC New Mexico, an allegedly non-

---

[3] The Tenth Circuit has directed courts to consider the following six factors before determining whether subordinate economic entities are entitled to share in a tribe's sovereign immunity: "(1) the method of creation of the economic entities; (2) their purpose; (3) their structure, ownership, and management, including the amount of control the tribe has over the entities; (4) the tribe's intent with respect to the sharing of its sovereign immunity; and (5) the financial relationship between the tribe and the entities." *Breakthrough Mgmt. Group*, 629 F.3d at 1187. Neither party has produced any evidence regarding these factors. Instead, LCC asks the Court to find that it automatically enjoys immunity as a § 477 corporation. The weight of the case law supports this request, *see, e.g.*, *Amerind Risk Mgmt. Corp. v. Malaterre*, 633 F.3d 680, 685 (8th Cir. 2011), but the Tenth Circuit has not definitively adopted this hardline approach, *see Breakthrough Mgmt. Group*, 629 F.3d at 1185 n. 8. Moreover, the Tenth Circuit has suggested in dicta that a § 477 corporation waives its sovereign immunity when its articles of incorporation contain a "sue and be sued" clause. *Ute Distrib. Corp. v. Ute Indian Tribe*, 149 F.3d 1260, 1268 (10th Cir. 1998) (citing cases). LCC's articles of incorporation contain such a clause. Consequently, ARCO could have challenged LCC's immunity on this basis. But it did not, and the Court need not address (1) whether § 477 corporations always enjoy immunity and (2) if so, whether sue or be sued clauses waive this immunity. By including this explanation, the Court is not expressing any opinion about these issues or suggesting that LCC does not enjoy immunity. The Court notes that most courts that have decided whether a § 477 corporation is entitled to sovereign immunity despite a "sue and be sued" clause have held that such a corporation does enjoy sovereign immunity. *See, e.g.*, *Memphis Biofuels, LLC v. Chickasaw Nation Industries, Inc.*, 585 F.3d 917 (6th Cir. 2009); *American Vantage Companies, Inc. v. Table Mountain Rancheria*, 292 F.3d 1091 (9th Cir. 2002). The Court is flagging these potential areas of dispute only to clarify the limited scope of its ruling.

immune entity. Finally, ARCO argues that it may pursue claims directly against LCC New Mexico under a New Mexico survivorship statute. The Court agrees with LCC that the first and third contentions lack merit. Nevertheless, with a small caveat that is discussed in more detail below, the Court is persuaded that the merger documents contain an unequivocal waiver of immunity for the claims of LCC New Mexico's creditors. Accordingly, for the time being, the Court will reject LCC's attempt to assert immunity as to these, and only these, claims.

### A. The 1986 Agreement to Terminate Leases

In 1986, before the creation and incorporation of LCC, the Pueblo and ARCO entered into an Agreement to Terminate Leases that governed the reclamation of the Jackpile Paguate uranium mine. *See* 1986 Agreement to Terminate Leases, Exhibit A to COMPLAINT (Doc. No. 1-2 at 3-4) (Agreement). In this Agreement, the Pueblo promised to "assume full and complete responsibility and liability under all applicable laws . . . for . . . the cleanup, reclamation or other environmental remedial action at the mine" and expressly waived its sovereign immunity for any claims brought under the Agreement. *Id.* at 3-5. The Agreement contemplated that the Pueblo would create a company to perform reclamation work. In the event this occurred, the Pueblo agreed that the company would "assume all of the responsibilities and liabilities of The Pueblo under th[e] Agreement." *Id.* at 5-6. ARCO maintains that these clauses, read together, amount to a prospective waiver of sovereign immunity of any entity, like LCC, created and controlled by the Pueblo to conduct reclamation work at the Mine.

The Court acknowledges that this is not an unreasonable reading of the provisions of the Agreement. But it is not the only reading. The case law is clear that a sovereign entity does not waive immunity it would otherwise enjoy by assuming liabilities. *See Nanomantube v. Kickapoo Tribe*, 631 F.3d 1150, 1153 (10th Cir. 2011) (agreeing to assume substantive obligations does not

7

constitute a clear waiver of sovereign immunity). To the extent the above provisions suggest that the Pueblo would waive the immunity of any company it created under the Agreement, this waiver is implied, not express. ARCO's arguments about the meaning of these provisions are impermissible attempts to have the Court uphold an implied waiver based on equity. *See* Response at 6 ("The waiver would not have accomplished [its] purpose if the Pueblo were simply allowed to form a new entity, clothe it with tribal immunity, and direct that entity to carry out the Pueblo's obligations under the Agreement."). But "[a] waiver of tribal sovereign immunity 'cannot be implied but must be unequivocally expressed.'" *Bank of Okla. v. Muscogee (Creek) Nation*, 972 F.2d 1166, 1171 (10th Cir. 1992) (quoting *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978)). Here, the Agreement does not contain an unequivocal waiver of LCC's sovereign immunity.

In the alternative, even if the Court were inclined to accept ARCO's claim that the Pueblo's waiver of sovereign immunity extended to LCC, this waiver does not include CERCLA claims. As the Court has previously held, the waiver is limited by its own terms to claims brought under the 1986 Agreement to Terminate Leases. MEMORANDUM OPINION AND ORDER (Doc. No. 73 at 7-8). ARCO's claims against LCC, which are brought under CERCLA, do not fall within this limited waiver. As a result, the Court cannot exercise jurisdiction over these claims under the 1986 Agreement to Terminate Leases and declines ARCO's request to find that the Agreement waived LCC's immunity for ARCO's CERCLA claims.

### B. Articles of Merger

ARCO's second waiver argument holds more promise, although it presents a very close question. ARCO maintains that the merger documents make clear that LCC waived its sovereign immunity "as to the liabilities it was assuming from LCC New Mexico," an allegedly non-

immune entity. Response at 8. ARCO particularly emphasizes the following section in the Plan of Merger:

> [B]ut all rights of creditors and all liens upon any property of either Constituent Corporation shall be preserved unimpaired, and all debts, liabilities and duties of the respective Constituent Corporations shall thenceforth attach to the Surviving Corporation and may be enforced against it to the same extent as if said debts, liabilities and duties had been incurred or contracted by it. Any action or proceeding whether civil, criminal or administrative pending by or against either Constituent Corporation, Laguna Construction Company, Inc. (New Mexico Corporation) and Laguna Construction Company, Inc. (Federal Corporation), shall be prosecuted as if the merger had not taken place, or the Surviving Corporation may be substituted in such action or proceeding.

Merger Documents, Exhibit 5 to Memo (Doc. No. 34-5 at 7-8) (Merger Documents). ARCO contends that it is a creditor within the meaning of this provision and that its right to force LCC into Court remained "unimpaired" by the merger.

Notably, LCC does not challenge the presuppositions that undergird ARCO's position. First, ARCO's argument hinges on the assumption that LCC New Mexico did not enjoy sovereign immunity. Although it refuses to explicitly concede this point, LCC never contests this fact. Memo at 11, 17. Thus, for the purposes of the present analysis, the Court will assume that LCC New Mexico did not possess any sovereign immunity.[4] *See Somerlott v. Cherokee Nation Distributors, Inc.*, 686 F.3d 1144, 1154 (10th Cir. 2012) (Gorsuch, J., concurring) ("[N]o matter how broadly conceived, sovereign immunity has never extended to a for-profit business owned by one sovereign but formed under the laws of a second sovereign when the laws of the incorporating second sovereign expressly allow the business to be sued."). Second, LLC does not deny that ARCO is a creditor whose rights it agreed to preserve unimpaired during and after the merger. The Court will treat this silence as a stipulation that ARCO is a creditor within the meaning of the Plan of Merger. The only question then remaining is whether LCC's promise not

---

[4] If LCC would like to contest this fact, the Court trusts it will file a motion clearly asserting the sovereign immunity of LCC New Mexico.

to impair ARCO's rights includes an unequivocal promise not to assert sovereign immunity as a bar to ARCO's pre-merger CERCLA claims.

The Court agrees with ARCO that the answer to this question is "yes." While the Plan of Merger does not reference sovereign immunity, LLC promised to preserve the rights of LLC New Mexico's creditors "unimpaired." Merger Documents at 7. LCC never explains what it believes this promise entails and the Court can think of only one reasonable construction of the promise: LCC New Mexico's creditors retain the same ability to enforce obligations against LCC as they possessed before the merger. Stated differently, LCC agreed to waive any defenses, including the defense of sovereign immunity, which are available to the federally-chartered LCC but would not have been available to LCC New Mexico. The Court finds that this promise is a clear and unequivocal waiver of sovereign immunity for any claims that could have been asserted against LCC New Mexico. *See Port Auth. Trans-Hudson Corp. v. Feeney*, 110 S. Ct. 1868, 1873 (1990) ("The Court will give effect to a State's waiver of Eleventh Amendment immunity . . . where . . . the text . . . will leave no room for any other reasonable construction.") (internal citation omitted).

The Court does not reach this conclusion lightly. It takes seriously the dictate that waivers of sovereign immunity "cannot be implied but must be unequivocally expressed." *E.F.W.*, 264 F.3d at 1304 (quoting *Santa Clara Pueblo*, 436 U.S. at 58). However, the Supreme Court does not require the use of the words "sovereign immunity" for a waiver to be deemed clear and explicit. *C & L Enters.*, 532 U.S. at 420. Here, the plain language of the Plan of Merger construed in a common sense manner, promises creditors that the merger will not impede their right to enforce obligations against LCC. The Court cannot recognize LCC's claims of sovereign immunity without disregarding this promise.

The Court notes that it could only find one other case addressing the effect of similar language in a merger document: *Kroll v. Board of Trustees of University of Illinois*, 934 F.2d 904, 909 (7th Cir. 1991). In *Kroll*, the plaintiff argued that the Board of Trustees of the University of Illinois – an entity possessing Eleventh Amendment sovereign immunity – had waived this immunity by subsuming a non-immune association. The special legislation effectuating the merger stated:

> The Board of Trustees of the University of Illinois shall be responsible and liable for all the liabilities and obligations of each of the corporations so merged; and any claim existing or action or proceeding pending by or against either of such corporations may be prosecuted to judgment as if such merger had not taken place, or the surviving corporation may be substituted in its place. Neither the rights of creditors nor any liens upon the property of either of such corporations shall be impaired by such merger.

Id. at 909. The Seventh Circuit Court of Appeals determined that this language constituted an immunity waiver. However, it found that this waiver did not allow the plaintiff to sue the Board in federal court because "the legislature might have intended the merger statute to allow actions only in other Illinois state courts, and a state does not waive its eleventh amendment immunity by consenting to suit only in its own courts." *Id.* at 910. In other words, the Seventh Circuit Court of Appeals held that language similar to the language in LCC's merger document constituted a forum-specific waiver of sovereign immunity.

Oddly enough, although LCC cites *Kroll*, neither LCC nor ARCO discuss what implications *Kroll's* forum analysis might have on this case. Significantly, LCC does not advance the nuanced argument that the Seventh Circuit Court of Appeals found persuasive; LCC does not acknowledge that the Plan of Merger contains a forum-specific waiver of immunity which allows ARCO to sue LCC in tribal or state court but prevents ARCO from suing LCC in federal court. To the extent the Seventh Circuit properly employed such an argument to dismiss the plaintiff's claims in *Kroll*, the Court is not convinced that the same reasoning governs the

outcome in this case. Here, the merger documents suggest that LLC New Mexico's creditors should be able to bring claims against LCC in any court in the State of New Mexico that otherwise has jurisdiction over the claims. *See* Merger Documents at 3 ("If the surviving Corporation is to be governed by the laws of any other state, such surviving corporation hereby (1) agrees that it may be served with process in the State of New Mexico in any proceeding for the enforcement of any obligation of the undersigned domestic Corporation . . . [and] (2) irrevocably appoints the Secretary of the State of New Mexico as its agent to accept service of process in any such proceeding . . .").

Moreover, and more importantly, the reasoning in *Kroll* simply does not fit the facts of this case. In *Kroll*, the Seventh Circuit Court of Appeals reasoned that the waiver of immunity for pre-existing claims could be read as a forum-specific waiver allowing suits against the immune state-entity in state court. This is not a reasonable construction of LCC's immunity waiver as applied to ARCO's CERCLA claims. Congress has vested federal courts with exclusive jurisdiction over CERCLA claims. *See* 42 U.S.C. § 9613(b); *Anderson v. United States DOL*, 422 F.3d 1155, 1157 n. 3 (10th Cir. 2005). Consequently, unlike in *Kroll*, interpreting LCC's waiver as a forum-specific waiver would effectively extinguish the waiver as applied to CERCLA claims. The language of the Plan of Merger does not support such a result; LCC promised to preserve unimpaired "all rights of creditors" without qualification. For this reason, the Court will not adopt the reasoning in *Kroll* wholesale. Instead, the Court will treat LCC's promise to preserve the right of creditors unimpaired as a waiver of its ability to assert sovereign immunity in any case where LCC New Mexico would not have had immunity.

LCC only makes one direct attempt to explain why this is not the best reading of the Plan of Merger. *See* Reply at 12-13. LCC points out that the Plan of Merger states that the liabilities

12

assumed by the surviving corporation may be enforced against it "to the same extent as if said debts, liabilities and duties had been incurred or contract by it." LCC maintains that this language "qualified everything that comes before" with the result that LCC retains sovereign immunity. Reply at 13. LCC's reading of the Plan, however, is grammatically troublesome. Despite being separated by a comma, the statement regarding creditors' rights and the statement regarding debt and liabilities are separate and individually complete sentences, each with its own subject and predicate. In other words, the Plan contains two distinct commands: (1) "all rights of creditors . . . shall be preserved unimpaired" and (2) "all debts, liabilities and duties of the respective Constituent Corporations shall thenceforth attach to the Surviving Corporation and may be enforced against it to the same extent as if said debts, liabilities and duties had been incurred or contracted by it." Merger Documents at 7. The words "to the same extent," upon which LCC places so much significance, apply only to "debts, liabilities and duties." By comparison, there is no limitation on the command that creditors' rights survive the merger intact and unaffected.

LCC makes several other arguments about why the merger did not affect its ability to assert sovereign immunity. None of these arguments changes the Court's conclusion. First, LCC emphasizes that "[t]he mere act of succeeding" LCC New Mexico, a state incorporated entity, does not preclude LCC from asserting immunity as to liabilities it inherited from LCC New Mexico. Memo at 15-17. This is correct. More than one Circuit Court of Appeals has held that a sovereign government may merge with a non-immune entity into an immune entity and then assert sovereign immunity to bar claims that could previously have been brought against the non-immune entity. *Amerind Risk Mgmt. Corp. v. Malaterre*, 633 F.3d 680, 686 n. 7 (8th Cir. 2011); *Maysonet-Robles v. Cabrero*, 323 F.3d 43, 51 (1st Cir. 2003); *Kroll*, 934 F.2d at 909. ARCO

13

does not deny this fact or argue that the merger automatically lifted LCC's immunity for liabilities it acquired from LCC New Mexico. Rather, ARCO contends that the Plan of Merger contains an express waiver of immunity for these claims. The cases cited by LCC recognize that this is a possibility. *Amerind*, 633 F.3d at 686-687; *Kroll*, 934 F.2d at 909.

Second, LCC insists that *Amerind* controls the outcome in this case. Memo at 15-16; Reply at 18-19. Yet, the merger language that was held not to constitute a waiver of sovereign immunity in *Amerind* is different than the language in LCC's Plan of Merger. *See Amerind*, 633 F.3d at 686 (the plaintiff argued that the tribal corporation waived its immunity through provision assuming the obligations and liabilities of non-immune entity). As a result, *Amerind* is of extremely limited persuasive value on the ultimate issue in this case: did LCC's promise to preserve the rights of creditors unimpaired constitute a clear waiver of sovereign immunity?

Third, LCC maintains the following language in the Plan of Merger explicitly reserved LCC's sovereign immunity.

> This Plan and the legal relations between the parties hereto shall be governed by and construed in accordance with the laws of the State of New Mexico, as described in the New Mexico Business Corporations Act, except that the Surviving Corporation shall have all the rights, privileges, immunities and powers of a corporation organized under 25 U.S.C. § 477 as specified in the Charter of the Federal Corporation.

Merger Documents at 10. As the Court sees it, this choice-of-law provision does not conflict with the Court's reading of the Plan of Merger. The Court recognizes that LCC is, as a general matter, governed by federal law and enjoys sovereign immunity to the extent federal law allows. Of course, federal law permits LCC to waive its immunity. Thus, the Court sees no incompatibility between the above provision and recognizing the existence of a clear, but limited waiver of LCC's sovereign immunity. To the contrary, the Court's interpretation of the Plan of Merger gives effect to each provision in the Plan, whereas LCC's proposed interpretation renders

14

certain provisions of the Plan meaningless. For example, the Plan of Merger contains a clear waiver of immunity for pending lawsuits. *See* Merger Documents at 7-8 ("Any action or proceeding whether civil, criminal or administrative pending by or against either Constituent Corporation, Laguna Construction Company, Inc. (New Mexico Corporation) and Laguna Construction Company, Inc. (Federal Corporation), shall be prosecuted as if the merger had not taken place . . ."). LCC's chosen reading of the choice-of-law provision would effectively expunge from the Plan of Merger both this waiver provision and LCC's promise to preserve the rights of creditors.

Finally, LCC argues that the Plan of Merger should not be read as containing a waiver of LCC's sovereign immunity because "LCC's corporate Charter permits a waiver subject to clearly defined requirements, none of which was met here." Memo at 17. In particular, LCC emphasizes that its corporate charter provides that any corporate sovereign immunity waiver must be approved by a resolution of the Board of Directors and the resolution must include certain information, such as a list of the property which may be subject to a judgment. LCC has not, however, identified any authority that would support a finding that its failure to comply with internal procedures could invalidate an otherwise valid and clear waiver of sovereign immunity. The primary case LCC relies on to support this point is inapposite. LCC cites *Memphis Biofuels, LLC v. Chickasaw Nation Indus., Inc.*, 585 F.3d 917 (6th Cir. 2009) for the proposition that "there can be no waiver [of a § 477 corporation's sovereign immunity] if the [corporate] Charter's specific conditions for effecting that waiver are not followed." Memo at 13.

In *Memphis Biofuels*, the Sixth Circuit held that a "sue and be sued" clause in a tribal corporation's corporate charter did not function as a waiver of sovereign immunity because the charter also contained a provision listing the procedures that must be followed to waive

15

sovereign immunity. *Id.* at 921-22. The Court reasoned that reading the "sue and be sued" clause as an immunity waiver would transform the later provision into utter surplusage. In reaching this conclusion, the Court was simply employing normal canons of interpretation to give meaning to the words in the corporate charter and determine whether one portion of the charter constituted a clear waiver of immunity. *Id.* The Court did not opine about whether a provision detailing how immunity could be waived would function as a limitation on a waiver of immunity in an unrelated contract or agreement. *Id.* In the absence of any authority regarding this issue, the Court will not hold that a valid and clear waiver of sovereign immunity must be consistent with a tribal corporation's internal procedures in order to be effective.

The Court notes that in certain circumstances a tribal corporation's ability to waive its sovereign immunity may be limited by the tribe from whom the immunity is derived. For example, a tribe may specify that a corporation can only waive its immunity in certain circumstances or that only certain individuals at the corporation have power to waive the immunity. In *Memphis Biofuels*, an unauthorized person signed a provision purporting to waive sovereign immunity on behalf of a tribal corporation. The Sixth Circuit found that this purported waiver, while clear, was invalid because the person who signed the waiver did not have the authority to waive the tribe's immunity under the terms of the corporate charter. *Id.* at 922. The validity of LCC's Plan of Merger, however, is not at issue in this case. LCC has represented that the merger was valid. The Plan of Merger indicates that it was duly approved by the board of the federally chartered LCC and that the Plan would be submitted to the Pueblo, LCC's sole shareholder, for approval. *See* Merger Documents at 6, 9. This is not a case where a rogue corporate official attempted to waive the corporation's immunity but lacked the power to actually do so. The parties both treat the Plan of Merger as a valid document approved by the

Pueblo. As a result, the Court is not convinced that LCC's decision not to follow its internal charter procedures for waiving its immunity invalidates or draws into question the waiver in the Plan of Merger. The Court will treat this waiver as effective and will deny LCC's motion to dismiss ARCO's pre-merger CERCLA claims.

### C. Claims Against LLC New Mexico

ARCO also argues that it may proceed on its claims against LCC New Mexico under New Mexico's corporate survivorship statute, N.M. Stat. Ann. § 53-16-24 (West 2013), even if LCC enjoys sovereign immunity. N.M. Stat. Ann. § 53-16-24 (West 2013) states:

> <u>Survival of remedy after dissolution</u>. The dissolution of a corporation does not take away or impair any remedy available to or against the corporation, its directors, officers or shareholders, for any right or claim existing, or any liability incurred, prior to the dissolution and any such action or proceeding by or against the corporation may be prosecuted or defended by the corporation in its corporate name. The shareholders, directors and officers may take such corporate or other action as appropriate to protect the remedy, right or claim.

ARCO contends that this statute applies to LCC New Mexico because the merger of one corporation into another is legally indistinguishable from the dissolution of the corporation. Response at 12 n. 4 (citing *United States v. U.S. Vanadium Corp.*, 230 F.2d 646, 648 (10th Cir. 1956) and N.M. Stat. Ann. § 53-19-62.2(E) (West 2013)). From this proposition, ARCO argues that it may proceed against LCC New Mexico, even if this Court dismisses LCC as a defendant from this action based on sovereign immunity.

ARCO misreads the scope of N.M. Stat. Ann. § 53-16-24. The statute does not cause LCC New Mexico's non-immune existence to continue "indefinitely" and separately from LCC's immune status. New Mexico law distinguishes mergers from dissolutions. With a merger, "upon delivery of the articles of merger [to the Secretary of State]…the separate existence of all

17

corporations parties to [a] plan of merger or consolidation, except the surviving or new corporation, shall cease[.]" N.M. Stat. Ann. § 53-14-6 (West 2013). That is to say, the corporation's business, including its assets and liabilities, continues unabated under the aegis of the post-merger entity.

In contrast, when a corporation files a statement of its intent to dissolve, "the corporation shall cease to carry on its business, except insofar as necessary for the winding up thereof[.]" N.M. Stat. Ann. § 53-16-5 (West 2013). Once articles of dissolution are filed with the Secretary of State and the Secretary is satisfied that the articles of dissolution comply with the law, "the existence of the corporation shall cease, except for the purpose of suits, other proceedings and appropriate corporate action by shareholders[.]" N.M. Stat. Ann. § 53-16-12 (West 2013).

Survival statutes make sense against this backdrop, especially given common law precedent that the dissolution of a corporation was "equivalent to the death of a natural person[,]" abating pending lawsuits and vesting title to corporate property in the shareholders. 16A Fletcher Cyclopedia of the Law of Corporations § 8113 (2014). But survival statutes are wholly superfluous where, as here, the successor corporation assumes its predecessor's liability and is substituted in any pending litigation.

This explains why New Mexico's survival statute is in the chapter governing the dissolution of corporations, not the merger of corporations. *Smith v. Halliburton Co.*, 879 P.2d 1198, 118 N.M. 179 (Ct. App. 1994), which ARCO cites for the proposition that a dissolved corporation may be sued in its corporate name indefinitely, must be read in this context. *Smith* acknowledges that the New Mexico's survivorship statute abrogates the common law rule that "actions to which a corporation was a party were abated upon dissolution of that corporation." *Smith*, 879 P.2d at 1202, 118 N.M. at 183 (citing *Oklahoma Natural Gas Co. v. Oklahoma*, 273

U.S. 257, 259 (1927)). But *Smith* recognized a crucial distinction between corporations that are organized under New Mexico law and corporations organized under foreign law, and that New Mexico's survivorship statute applies only to the former, not the latter *See Smith*, 879 P.2d at 1203, 118 N.M. at 184 (citing N.M. Stat. Ann. § 53-11-2(A)).

True, LCC New Mexico, unlike the corporation at issue in *Smith*, was organized under New Mexico law. Thus if LCC New Mexico had been dissolved, New Mexico's survivorship statute would preserve ARCO's causes of action against it. But as the Court has explained above, New Mexico's survivorship statute does not extend to mergers of a New Mexico corporation with a foreign corporation like LCC, which is organized under federal law. New Mexico law explicitly contemplates this distinction: in general, the "effect" of a merger under New Mexico law is the transfer of the merged corporation's assets and liabilities into the successor corporation, *see* N.M. Stat. Ann. § 53-14-6(C) (West 2013). As a result, New Mexico's survivor statute simply does not apply after a merger.[5] Instead, federal law applies to LCC, the successor corporation to LCC New Mexico, and ARCO concedes that federal law generally provides LCC with sovereign immunity from suit. The Court will dismiss ARCO's claims as asserted directly against LCC New Mexico, a non-existent entity.

## II. Dismissal Under Rule 12(b)(6)

As an alternative to its assertion of sovereign immunity, LCC asks the Court to dismiss ARCO's CERCLA claims under Federal Rule of Civil Procedure 12(b)(6). LCC maintains that it is not a "person" within the meaning of CERCLA and is not, therefore, subject to suit under the statute. The Court will deny this request as premature because LCC relies on evidence outside

---

[5] ARCO's argument raises practical hurdles as well. How would a lawsuit against LCC New Mexico, but not LCC, proceed? Would ARCO be required to serve LCC New Mexico with process? Who would it serve? What if no one enters an appearance for LCC New Mexico and answers the complaint? Assuming a default judgment is entered, against whom could ARCO institute enforcement proceedings?

the boundaries of the complaint to support its claims that it is not a person within the meaning of CERCLA. The Court may not consider this evidence without converting LCC's motion into a motion for summary judgment and without providing ARCO notice so that it has an opportunity to request discovery under Rule 56(d) and/or to submit competing evidence. *See* FED. R. CIV. P. 12(d). Thus, the Court finds that the appropriate course is to deny LCC's Rule 12(b)(6) motion as premature without foreclosing LCC's right to reassert its arguments in a properly titled motion.

The Court notes that in a footnote, LCC states that it is incorporating the arguments of the Pueblo, a co-defendant, into its request for dismissal. Memo at 18 n. 10. LCC does not, however, clearly state which arguments it wants the Court to consider and it does not explain how these arguments apply to LCC as opposed to the Pueblo. As a result, the Court will not address whether alternative grounds exist for dismissing ARCO's CERCLA claims as asserted against LCC. If LCC has a valid basis for requesting dismissal of these claims that it has not clearly stated, it may do so in accordance with the Federal Rules of Civil Procedure.

IT IS THEREFORE ORDERED THAT:

1. LCC's OPPOSED MOTION OF DEFENDANT LAGUNA CONSTRUCTION COMPANY, INC. TO DISMISS THE COMPLAINT (DOC. #1). (Doc. No. 33) is granted in part and denied in part.
2. By separate order, the Court will dismiss ARCO's attempt to assert claims directly against LCC New Mexico, a company which no longer exists and has been merged into LCC, and the Court will dismiss ARCO's CERCLA claims to the extent these claims arose after the 1995 merger of LCC New Mexico into LCC Federal.

_____
SENIOR UNITED STATES DISTRICT JUDGE