## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

ATLANTIC RICHFIELD COMPANY,
  Plaintiff,

v.            No. 1:15-cv-56-JAP/KK

THE PUEBLO OF LAGUNA, an Indian
tribe, and LAGUNA CONSTRUCTION
COMPANY, INC.,
  Defendants.

## MEMORANDUM OPINION AND ORDER

On March 29, 2016, Defendant Laguna Construction Company, Inc. (LCC) filed a motion to reconsider asking the Court to reverse its partial denial of LCC's motion asserting sovereign immunity. *See* OPPOSED MOTION FOR DEFENDANT LAGUNA CONSTRUCTION COMPANY, INC. FOR RECONSIDERATION OF THE COURT'S MEMORANDUM OPINION AND ORDER (DOC # 75) AND ORDER OF PARTIAL DISMISSAL OF PLAINTIFF'S CLAIMS AGAINST LAGUNA CONSTRUCTION COMPANY, INC. (DOC # 76) (Doc. No. 79). Plaintiff Atlantic Richfield Company (Plaintiff or ARCO) opposes the motion as procedurally and substantively flawed. *See* ATLANTIC RICHFIELD COMPANY'S RESPONSE IN OPPOSITION TO LAGUNA CONSTRUCTION COMPANY'S MOTION FOR RECONSIDERATION (Doc. No. 83) (Response). Having examined the briefing[1] and carefully reviewed the relevant law, the Court finds that LCC has presented a new argument showing that it is entitled to sovereign immunity as to Plaintiff's

---

[1] The Court has read and considered LCC's MEMORANDUM OF LAW IN SUPPORT OF OPPOSED MOTION OF DEFENDANT LAGUNA CONSTRUCTION COMPANY, INC. FOR RECONSIDERATION OF THE COURT'S MEMORANDUM OPINION AND ORDER AND ORDER OF PARTIAL DISMISSAL OF PLAINTIFF'S CLAIMS AGAINST LAGUNA CONSTRUCTION COMPANY, INC. (DOCS. #75 & #76) (Doc. No. 80) (Memo), ARCO's Response (Doc. No. 83), and LCC's REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION OF DEFENDANT LAGUNA CONSTRUCTION COMPANY, INC. FOR RECONSIDERATION (DOC. #79) (Doc. No. 91) (Reply).

claims. Consequently, the Court will grant LCC's motion to reconsider and will dismiss the remaining claims asserted against LCC.

### Procedural History

On January 21, 2015, Plaintiff filed a complaint seeking reimbursement under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. § 9601 *et. seq.*, from LCC for the cleanup of the Jackpile Paguate uranium mine. *See generally* COMPLAINT (Doc. No. 1) (Complaint). As the complaint insinuates, LCC was originally incorporated in 1988 as a New Mexico corporation. *Id.* ¶ 31; (Doc. No. 34 at 8). During the following years, while functioning as a state corporation, LCC conducted most, if not all, of the reclamation work that forms the basis of Plaintiff's CERCLA claims. Complaint ¶ 31. In 1994, however, towards the end of the reclamation project, the Pueblo of Laguna (the Pueblo), the sole shareholder of LCC, created a tribal corporation under 25 U.S.C. § 477 with the same name as the New Mexico state corporation and then merged the state corporation into the tribal corporation with the tribal corporation as the surviving entity. (Doc. No. 34 at 8-9). As a result of this merger, which was completed in 1995, LCC became a federally-chartered tribal corporation governed by federal law.

On May 26, 2015, in lieu of filing an answer to Plaintiff's complaint, LCC filed a motion asserting tribal sovereign immunity and asking the Court to dismiss the claims asserted against it. *See* OPPOSED MOTION OF DEFENDANT LAGUNA CONSTRUCTION COMPANY, INC. TO DISMISS THE COMPLAINT (DOC. #1). (Doc. No. 33). In response to this motion, ARCO conceded that LCC enjoys sovereign immunity as a tribal corporation owned by the Pueblo and organized under 25 U.S.C. § 477. *See generally* ATLANTIC RICHFIELD COMPANY'S RESPONSE IN OPPOSITION TO LAGUNA CONSTRUCTION COMPANY'S MOTION TO

DISMISS (Doc. No. 48). ARCO maintained, however, that during the merger LCC had waived

its immunity for liabilities the federally-chartered LCC inherited from LCC New Mexico, a non-

immune entity.[2] To support this position, ARCO emphasized the following language from the

Plan of Merger:

> [A]ll rights of creditors and all liens upon any property of either Constituent Corporation shall be preserved unimpaired, and all debts, liabilities and duties of the respective Constituent Corporations shall thenceforth attach to the Surviving Corporation and may be enforced against it to the same extent as if said debts, liabilities and duties had been incurred or contracted by it.

Merger Documents (Doc. No. 34-5 at 7). ARCO read this language as a promise that the

obligations of LCC New Mexico could be enforced against LCC despite its newfound sovereign

immunity. (Doc. No. 48 at 8, 11). According to ARCO, this waiver encompassed its CERCLA

claims because "all, or nearly all, of the conduct relevant to LCC's CERCLA liability occurred

while [LCC] was still a New Mexico corporation." *Id.* at 2.

LCC filed a reply acknowledging that it had assumed the liabilities of LCC New Mexico

as a result of the 1995 merger, but absolutely denying that it had waived its immunity as to these

liabilities. REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANT LAGUNA

CONSTRUCTION COMPANY'S MOTION (DOCS. # 33, 34) TO DISMISS THE

COMPLAINT (DOC. # 1) AGAINST IT (Doc. No. 63). In taking this position, LCC focused its

attention on the language in the Plan of Merger involving the transfer of "all debts, liabilities and

duties" from LCC New Mexico to the surviving, federally-chartered LCC. It never directly

addressed ARCO's contention that LCC waived its immunity by promising to preserve the rights

of creditors unimpaired. Nor did LCC challenge the two key assumptions undergirding ARCO's

---

[2] ARCO also argued that (1) the Pueblo waived LCC's immunity for ARCO's CERCLA claims in ARCO's and the Pueblo's 1986 Agreement to Terminate Leases and (2) ARCO could sue LCC New Mexico directly under the New Mexico survivorship statute. The Court rejected both of these arguments. Unsurprisingly, LCC does not challenge either determination in its motion to reconsider.

waiver argument: (1) that ARCO was a creditor whose rights LCC promised to protect and (2) that LCC New Mexico did not enjoy sovereign immunity.

In light of this silence, the Court made the following assumptions for the purpose of ruling on LCC's motion to dismiss: (1) insofar as ARCO was asserting CERCLA claims based on the conduct of LCC New Mexico, ARCO was a creditor of LCC New Mexico within the meaning of the Plan of Merger and (2) LCC New Mexico did not possess sovereign immunity. MEMORANDUM OPINION AND ORDER (Doc. No. 75 at 9) (March 1, 2016 MOO). Based on these assumptions, the Court concluded that the language in the merger documents constituted a waiver of immunity for ARCO's claims. *Id.* at 10-13. The Court reached this conclusion because it could conceive of only one reasonable construction of LCC's promise to preserve the rights of creditors "unimpaired:" LCC assured that LCC New Mexico's creditors would retain the same ability to enforce obligations against LCC as they possessed before the merger. I.e., LCC agreed to waive any defenses, including the defense of sovereign immunity, that would not have been available to LCC New Mexico. *Id.*

In its motion to reconsider, LCC attacks the Court's conclusion as contrary to *Amerind Risk Mgmt. Corp. v. Malaterre*, 633 F.3d 680 (8th Cir. 2011) and *Memphis Biofuels, LLC v. Chickasaw Nation Indus., Inc.*, 585 F.3d 917 (6th Cir. 2009) – two cases that the Court addressed at length and ultimately distinguished in its March 1, 2016 MOO. Additionally, LCC asserts for the first time on reconsideration that ARCO was not a creditor of LCC New Mexico and is not, therefore, entitled to bring claims against LCC unimpaired by the merger.

## Standard of Review

While the rules of civil procedure do not articulate a specific procedure by which a party may object to an interim order, Rule 54(b) provides that "any order or other decision, however

designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b).

As a general matter, a district court possesses broad discretion to review interlocutory matters under this standard. *Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247, 1251 (10th Cir. 2011); *Anderson v. Deere & Co.*, 852 F.2d 1244, 1246 (10th Cir. 1988). This does not mean, however, that litigants should treat Rule 54(b) as an invitation to air their disagreement with a court's ruling or to present more refined versions of arguments that the court has already rejected. The Tenth Circuit has indicated that a district court faced with a Rule 54(b) motion to reconsider may use the standards for reviewing a motion to alter or amend a judgment under Fed. R. Civ. P. 59(e) to guide its analysis. *Ankeney v. Zavaras*, 524 F. App'x 454, 458 (10th Cir. 2013) (unpublished*).* Under the Rule 59(e) standards, a court may grant a motion for reconsideration in three circumstances: when there is "an intervening change in the controlling law, the availability of new evidence, or the need to correct clear error or prevent manifest injustice." *Brumark Corp. v. Samson Res.Corp.*, 57 F.3d 941, 948 (10th Cir. 1995). A motion to reconsider is not an opportunity "to revisit issues already addressed or advance arguments that could have been raised earlier." *United States v. Christy*, 739 F.3d 534, 539 (10th Cir. 2014). In other words, a motion to reconsider should do more than simply restate the position that was unsuccessfully advanced by the party in the initial motion, and should not present new arguments that could have been raised in the initial motion.

## Discussion

### A.  Propriety of Reconsideration

ARCO contends that LCC's motion to reconsider is a procedurally improper attempt to present new arguments that should have been raised previously and to rehash the same losing arguments LCC raised in its motion to dismiss. According to ARCO, this is reason enough to deny LCC's motion to reconsider. Response at 1-2. The Court agrees in part. In its motion to reconsider, LCC contends that it "did not waive its sovereign immunity in the Plan of Merger" because (1) it assumed the liabilities of LCC New Mexico, but did not waive immunity as to these liabilities and (2) the Plan did not comply with the waiver requirements of LCC's corporate charter. Memo at 2, 11-12. These are the same arguments that LCC advanced in its motion to dismiss and that the Court thoroughly analyzed in its March 1, 2016 MOO. For the reasons stated in that opinion, the Court stands by its conclusion that LCC waived its sovereign immunity as to the claims of the creditors of LCC New Mexico. LCC has not identified any new evidence, change in law, or clear error[3] that would warrant revisiting this issue.

Nevertheless, the Court finds that it must address LCC's  new argument in favor of reconsideration. As both parties recognize, the limited waiver of LCC's sovereign immunity only permits ARCO to assert claims against LCC to the extent ARCO is asserting claims as a creditor of LCC New Mexico.[4] In its March 1, 2016 MOO, the Court assumed ARCO was a creditor because ARCO averred that it was and LCC did not challenge this claim. ARCO maintains that

---

[3] LCC argues that reconsideration is appropriate because the Court clearly misread *Amerind*, 633 F.3d 680, a case LCC cited as persuasive authority. The Court rejects LCC's interpretation of *Amerind* and of the Court's prior ruling. As the Court previously explained, unlike the defendant in *Amerind*, LCC not only assumed the liabilities of LCC New Mexico, it promised to preserve the rights of LCC's creditors unimpaired. Because *Amerind* does not address the import of this second promise, it has little to no persuasive value in determining whether such a promise constitutes a waiver of sovereign immunity.

[4] In recognition of this fact, the Court previously dismissed ARCO's post-merger CERCLA claims. March 1, 2016 MOO at 20.

the Court should not reopen this determination because LCC could have countered ARCO's claim to be a creditor in its briefing on the motion to dismiss, but chose not to do so. In the normal course of affairs, ARCO would have a solid argument. This Court does not bear responsibility for constructing the parties' arguments. If LCC believed ARCO did not qualify as a creditor of LCC New Mexico within the meaning of the Plan of Merger, LCC should have contested this issue in the reply in support of its motion to dismiss. S*ee Kipling v. State Farm Mut.*, 774 F.3d 1306, 1307 (10th Cir. 2014) (holding that the district court did not abuse its discretion in denying defendant's motion to reconsider, which asserted a "respectable" and potentially "correct" defense to liability, because defendant could have raised the argument earlier but failed to do so).

Normal principles of waiver do not apply, however, when the Court's jurisdiction is called into question. *See Ramey Constr. Co. v. Apache Tribe of Mescalero Reservation*, 673 F.2d 315, 318 (10th Cir. 1982) (holding that a failure to appeal an adverse sovereign immunity determination did not prevent tribal defendants from raising sovereign immunity as a defense in a motion to reconsider on remand; "[s]o long as a case is pending, the issue of federal court jurisdiction may be raised at any stage of the proceedings."). It is well-established that a sovereign generally does not waive its immunity by failing to assert arguments in favor of immunity in a timely fashion. *Villescas v. Abraham*, 311 F.3d 1253, 1257, n.3 (10th Cir. 2002). Consequently, the Court will not treat LCC's failure to timely object to ARCO's alleged creditor-status as a waiver of LCC's argument that ARCO's CERCLA claims do not fall within the scope of the limited waiver of sovereign immunity contained in the Plan of Merger. Because the Court has not yet addressed the merits of this particular argument, it will do so now.

**B.  ARCO's Status as a Creditor**

The Tenth Circuit has repeatedly admonished courts to "construe waivers of sovereign immunity narrowly." *Iowa Tribe v. Salazar*, 607 F.3d 1225, 1236 (10th Cir. 2010); *see also Kane County v. United States*, 772 F.3d 1205, 1211 (10th Cir. 2014) ("[W]aivers of sovereign immunity are to be read narrowly and conditions on the waiver are to be strictly observed."); *Ramey Constr. Co. v. Apache Tribe of Mescalero Reservation*, 673 F.2d 315, 320 (10th Cir. 1982) (when faced with a dispute over the scope of a waiver of tribal sovereign immunity, the court must construe the challenged waiver strictly). This is because "sovereign immunity [is] an inherent part of the concept of sovereignty." *Breakthrough Mgmt. Group, Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1182 (10th Cir. 2010). Thus, the sovereign – not the court – is generally the master of its own immunity. A sovereign entity, such as a tribal corporation, may choose to waive its immunity as to certain claims, but not others, or it may set limits on an immunity waiver safe in the knowledge that a more extensive waiver cannot be implied but would have to be unequivocally expressed. *E.F.W. v. St. Stephen's Indian High Sch.*, 264 F.3d 1297, 1304 (10th Cir. 2001) (quoting *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978)). In other words, "[w]hen consent to be sued is given, the terms of the consent establish the bounds of a court's jurisdiction." *Ramey*, 673 F.2d at 320.

Here, the Court has determined that LCC waived its sovereign immunity in the Plan of Merger for claims brought by "creditors" of LCC New Mexico. Unfortunately, the Plan of Merger does not define the word "creditor." Nor does it reference any other document or source of law that contains a definition of the word "creditor." As a result, the meaning of the word is subject to debate. LCC argues that the Court should construe the word "creditor" in a narrow sense as "one who holds a demand which is certain and liquidated" or as "one to whom money is

due." Memo at 8-10. LCC insists that ARCO was not a creditor within the meaning of either

definition because LCC New Mexico did not owe ARCO a debt at the time of the merger.[5]

ARCO, on the other hand, argues that "creditor" should be interpreted broadly in

accordance with the United States Bankruptcy Code to include any entity having a right to

payment based on LCC New Mexico's conduct, whether or not this right to payment arose prior

to or after the merger. ARCO points out that the Plan of Merger is modeled on language from

NMSA § 53-14-6(E), the New Mexico statute which governs intra-state mergers. NMSA § 53-

14-6(E) states:

> When a merger or consolidation has become effective . . . the surviving or new
> corporation shall thenceforth be responsible and liable for all the liabilities and
> obligations of each of the corporations so merged or consolidated, and any claim existing
> or action or proceeding pending by or against any of such corporations may be
> prosecuted as if the merger or consolidation had not taken place, or the surviving or new
> corporation may be substituted in its place. Neither the rights of creditors nor any liens
> upon the property of any such corporation shall be impaired by the merger or
> consolidation.

While there is no New Mexico case law defining or interpreting the word "creditor" as used in

NMSA § 53-14-6(E), one apparent purpose of the statute is to ensure that creditors and other

individuals with claims or potential claims against the non-surviving merged company retain the

ability to enforce these claims against the surviving company once the merger is complete.  *See*

*In re Silicone Gel Breast Implants Prods. Liab. Litig.*, 837 F. Supp. 1123, 1126 (N.D. Ala. 1993)

(finding that it is a fundamental principle of statutory mergers that the surviving corporation

cannot escape personal jurisdiction in a state where one of the merging corporations had been

---

[5]ARCO does not deny that did not have a viable CERCLA claim against LCC New Mexico as of the merger. The Court will, therefore, accept this as true for the purpose of ruling on LCC's motion to reconsider. The Court notes that ARCO asserts both CERCLA cost recovery and CERCLA contribution claims against LCC. While the cost recovery claims request reimbursement for monies spent on cleanup efforts during or after 2010, the contribution claim requests reimbursement for funds released as part of a 1986 settlement. ARCO does not, however, argue that its contribution claim falls within LCC's narrow reading of the waiver language. Accordingly, the Court will treat this claim as abandoned.

subject to suit). According to ARCO, this suggests that the New Mexico State Corporation Commission may have taken steps to block the proposed merger of LCC New Mexico in the absence of assurances that LCC would assume its liabilities and waive immunity as to these obligations.

The Court is sympathetic to Plaintiff's position. If the Court was tasked with interpreting the Plan of Merger according to the normal principles of contract construction, without the patina of sovereign immunity, the Court might be inclined to adopt Plaintiff's proposed definition of the word "creditor." The doctrine of sovereign immunity, however, ties the Court's hands. Absent evidence that LCC intended to use the word "creditor" broadly, the Court must construe the word in favor of LCC. In other words, to the extent the word "creditor" encompasses a range of meanings and is, therefore, ambiguous, the Court must adopt the most narrow but reasonable meaning of the word unless and until ARCO, the party asserting jurisdiction, carries the burden of showing that LCC was clearly using the word "creditor" to comprehensively waive its sovereign immunity for any and all claims arising from LCC New Mexico's conduct. *See Impact Energy Res., LLC v. Salazar*, 693 F.3d 1239, 1244 (10th Cir. 2012) ("The party asserting jurisdiction bears the burden of proving that sovereign immunity has been waived.").

ARCO has not satisfied this burden. LCC has proposed a narrow, but reasonable interpretation of the Plan of Merger: LCC waived sovereign immunity and promised to preserve the rights of all entities who currently (as of the merger) possessed claims against LCC New Mexico. This limited waiver would not apply to entities like ARCO whose claims did not come to fruition until after the merger was complete. ARCO has not presented any evidence that this reading of the Plan of Merger is clearly incorrect. ARCO does not cite to any pre-1995 New Mexico case law defining the word "creditor." Nor does it provide any evidence that LCC

10

understood the term "creditor" in accordance with the United States Bankruptcy Code, a source of law that is never referenced in the Plan of Merger.

ARCO contends that LCC must have intended that the word "creditor" have an inclusive definition because otherwise the New Mexico State Corporation Commission would not have approved the merger. But this is purely speculative. NMSA § 53-14-7(B), the statute governing inter-state mergers, states "if the surviving or new corporation is to be governed by the laws of any state other than this state, the effect of such merger of consolidation shall be the same as in the case of the merger or consolidation of domestic corporations except insofar as the laws of such other state provide otherwise." The statute does not require the inclusion of specific language for a merger of a New Mexico corporation to be approved.[6] Because ARCO has not presented any evidence showing that LCC's waiver of sovereign immunity clearly extends to entities, like ARCO, whose claims against LCC did not accrue until after the merger was completed, the Court finds that LCC is entitled to sovereign immunity as to Plaintiff's CERCLA claims.

IT IS THEREFORE ORDERED THAT:

1. LCC's OPPOSED MOTION FOR DEFENDANT LAGUNA CONSTRUCTION COMPANY, INC. FOR RECONSIDERATION OF THE COURT'S MEMORANDUM OPINION AND ORDER (DOC # 75) AND ORDER OF PARTIAL DISMISSAL OF PLAINTIFF'S CLAIMS AGAINST LAGUNA CONSTRUCTION COMPANY, INC. (DOC # 76) (Doc. No. 79) is GRANTED.

---

[6] LCC takes the position that the New Mexico Secretary of State "has no authority . . . to approve or disapprove a merger with a foreign corporation." Reply at 8 n.8. This strikes the Court as an overly technical reading of NMSA § 53-14-7, which requires any New Mexico corporation participating in a merger to comply with the provisions of the New Mexico Business Corporation Act. NMSA § 53-14-7 (A)(1). However, the Court takes no position on this issue. ARCO has not challenged the validity of the merger. Nor does the authority of the New Mexico Secretary of State to approve the merger change the Court's conclusion.

2.   By separate order, the Court will dismiss the remaining claims against LCC.



_____

SENIOR UNITED STATES DISTRICT JUDGE